IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

### AFFIDAVIT IN SUPPORT OF A COMPLAINT AND ARREST WARRANT

I, Special Agent Justin P. Niedzwecki, being duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the Federal Bureau of Investigation (FBI), and have been for approximately 7 years. Currently, I am assigned to the FBI's Resident Agency in Oxford, Mississippi (MS). During this time, I have had extensive training and experience in the investigations of violent crime and public corruption. This training and experience includes evidence gathering and interviewing victims, witnesses, and suspects. The information contained in this affidavit is the result of my own investigation and information provided to me by other law enforcement officers. Because it is being submitted for the limited purpose of demonstrating probable cause, this affidavit does not contain all of the information known to me and/or other law enforcement officers involved in this investigation.

2. Based upon my training, experience, and the facts set forth in this affidavit, there is probable cause to believe that from on or about June 2003 through June 12, 2018, as well as on June 21, 2018, July 5, 2018, and July 26, 2018, the head Law Enforcement Official of Tallahatchie County, Sheriff, WILLIAM BREWER (BREWER), committed violations of Title 21 U.S.C. § 846 and Title 18 U.S.C. § 1951.

3. This affidavit is made in support of a criminal complaint and arrest warrant for BREWER, along with a search warrant for BREWER's person, vehicles, residence, and all out buildings including barn, as well as any safes located at the residence, which residence and barn are located at 7533 Highway (HWY) 32 East, Oakland, MS 38948. The residence and barn are described in paragraph 9 below and photographs are attached hereto as Attachment C.

### PROBABLE CAUSE

4. An FBI Confidential Human Source (CHS) reported that approximately 15 years ago, between the ages of 17 to 18 years old, CHS started participating in illegal activity with BREWER. CHS's illegal activity consisted of robbing drug dealers of their drugs and money, providing the stolen money to BREWER, selling the stolen illegal drugs, and then providing monetary proceeds from the sale of the illegal drugs to BREWER. In return, BREWER protected CHS from law enforcement in Tallahatchie County. Over approximately the last 15 years, CHS has robbed drug dealers at least 50 times. The illegal drugs stolen and sold by CHS included methamphetamine, cocaine base (that is, crack cocaine), and powder cocaine.

5. CHS also reported that approximately two to three years ago, BREWER found out CHS was dealing methamphetamine that CHS had purchased from illegal drug suppliers (rather than stealing from drug dealers as CHS had conspired with BREWER to do for the previous 12 years before this). For the last two to three years, CHS paid BREWER $500.00 to $600.00 every other week from the proceeds of CHS's illegal drug dealing.

6. BREWER is fully aware of CHS's crimes and illegal drug activity which consists of, but is not limited to, the illegal distribution of methamphetamine. BREWER protected, conspired, and allowed CHS to conduct illegal activity in Tallahatchie County for approximately the last 15 years. In exchange for BREWER's protection and freedom to conduct illegal activity in Tallahatchie County, CHS provided monetary proceeds to BREWER from all of CHS's illegal activity. On more than one occasion, BREWER warned CHS to proceed with caution while conducting illegal activity due to the presence of local, state, and/or federal law enforcement.

7. FBI agents approached the CHS on June 12, 2018, and CHS agreed to work for the FBI.

8. From June 13, 2018 through approximately June, 20, 2018, CHS and BREWER planned and agreed together, in person and through recorded telephone calls, to rob a drug dealer in Tallahatchie County, for approximately nine to ten bricks of methamphetamine. A brick of methamphetamine is equivalent to a kilogram. A kilogram is equal to 35 ounces or 1,000 grams. BREWER did not know that the CHS was working with the FBI at this time and that the theft from the drug dealer was a ruse. Under the direction of the FBI, CHS paid BREWER a total of $10,000.00. BREWER accepted three payments from CHS on June 21, 2018, July 5, 2018, and July 26, 2018. BREWER believed CHS had robbed a drug dealer in Tallahatchie County just like they had planned and executed in the past, approximately 50 times. **[Attachment A – complete list of serial numbers for $10,000.00 paid to BREWER]** The initial payment represented the money supposedly stolen by CHS from the drug dealer and the last two payments represented a portion of the proceeds from the supposed sale of the stolen bricks of methamphetamine.

9. On June 20, 2018, at the direction of the FBI, CHS made a recorded telephone call to BREWER. CHS told BREWER that CHS had robbed a drug dealer. CHS wanted to meet with BREWER, but BREWER had people with him and was unavailable to meet. BREWER told CHS to contact him the next day.

10. On June 21, 2018, CHS traveled to BREWER's residence to pay BREWER $6,500.00 dollars, which BREWER believed was the money CHS had stolen from the drug dealer. The $6,500.00 was concealed in a cellular telephone box that can be described as green in color and is the average size box that a cellular telephone would be packaged in when purchased. The cellular telephone box has writing on it for a Straight Talk Wireless, LG REBEL 3 LTE, five inch screen, Android 7.0, 16 GB internal memory. When the cellular telephone box is opened, a unique barcode sticker with the numbers 616960226352 are visible. **[Attachment B- photographs of the cellular telephone box, photographs of the $6,500.00 paid to BREWER, and serial numbers for the $6,500.00]** During a recorded conversation, while CHS was at BREWER's residence, CHS told BREWER that CHS had robbed a drug dealer and made it known that CHS had recovered ten kilograms of methamphetamine and money. CHS handed BREWER the cellular

telephone box with $6,500.00 and told BREWER to examine it. BREWER examined it, then handed the cellular telephone box with the money back to CHS, and told CHS to put it under a bucket in the barn located directly southeast from BREWER's residence across HWY 32. CHS followed BREWER's instructions and placed the money in a bucket in the barn and departed the location. BREWER's residence at 7533 HWY 32 East, Oakland, MS 38948 can be described as a one story farm style house, red brick, black shingled roof, and white pillars on the front and side of the house. BREWER's barn, directly southeast from his residence and across HWY 32, can be described as a large steel framed shed with tin covering three sides. **[Attachment C- aerial photograph of BREWER's residence and barn, photographs of BREWER's residence, and photographs of BREWER's barn.]**

11. On June 21, 2018, shortly after CHS departed from BREWER's barn, there was a recorded telephone call between CHS and BREWER. BREWER asked CHS where CHS put "that shit" (referring to the money in the barn). CHS described to BREWER where CHS had put the money. BREWER told CHS that BREWER had it and ended the telephone call.

12. On July 5, 2018, CHS traveled to BREWER's residence to pay BREWER $1,000.00, which BREWER believed were the proceeds from CHS's sale of the stolen methamphetamine. During a recorded conversation, while CHS was on BREWER's property, BREWER instructed CHS to put the money in the same place CHS had on June 21, 2018. CHS told BREWER that CHS had a couple more bricks of methamphetamine left to sell. BREWER warned CHS to be careful who CHS was dealing with during CHS's illegal activity. CHS then followed BREWER's instructions and placed the money in a bucket in the barn and departed the location. **[Attachment D- photograph of the $1,000.00 paid to BREWER, and serial numbers for the $1,000.00]**

13. On July 26, 2018, CHS traveled to BREWER's residence to pay BREWER $2,500.00, which BREWER believed were the proceeds from CHS's sale of the stolen methamphetamine. During a recorded conversation, while CHS was at BREWER's residence, CHS told BREWER that CHS had sold all of the bricks of methamphetamine CHS had stolen and had nothing left. BREWER encouraged CHS to continue selling methamphetamine. BREWER warned CHS to be careful who CHS was dealing with during CHS's illegal activity. BREWER instructed CHS to put the money in the same place CHS had on June 21, 2018 and July 5, 2018. CHS then followed BREWER's instructions and placed the money in a bucket in the barn and departed the location. **[Attachment E- photographs of the $2,500.00 paid to BREWER, and serial numbers for the $2,500.00]**

14. CHS reported BREWER has a safe in his residence at 7533 HWY 32 East, Oakland, MS 38948. CHS has known about the safe for approximately five years.

15. For the above reasons, I have probable cause to believe that WILLIAM BREWER committed violations of Title 21 U.S.C. § 846 and Title 18 U.S.C. § 1951 and I respectfully request that the Court authorize a complaint charging BREWER with the aforementioned offense and a warrant for his arrest.

16. For the above reasons, I have further probable cause to believe that evidence related to violations of Title 21 U.S.C. § 846 and Title 18 U.S.C. § 1951 are located on BREWER's person, and at BREWER's residence, located at 7533 Highway (HWY) 32 East, Oakland, MS 38948, including the barn located across the road from the residence and any vehicles and safes located at the residence. The items to be seized are listed in Attachment F. I further request permission to forcibly enter any safes located on the premises described herein. I also request permission to search any vehicle BREWER is using at the time of his arrest.

JPN / RP

Respectfully submitted,

_____
Special Agent Justin P. Niedzwecki
Federal Bureau of Investigation

Sworn and subscribed before me
This 10th day of August 2018, in Oxford, Mississippi

_____
LeRoy D. Percy
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF MISSISSIPPI